May it please the Court, I am Robert Long, representing the appellant Keith McDonald, and I would like to reserve three minutes for rebuttal. With the Court's permission, I will begin this morning with the government's decision to try Mr. McDonald in Orange County rather than in Los Angeles County. Under the District Court's general order, a criminal case may be tried in the Southern Division of the Central District, which is Orange County, only if at least one of the crimes charged or a part of the crime is alleged to have been committed within the Southern Division. Now, there's no dispute that 20 of the 21 counts in the indictment were committed entirely within Los Angeles County, which is the Western Division of the Central District. As to the 21st count, which is count 16, that charged McDonald with conspiring with members of the Carson City Council to commit extortion under color of official right. Now, Carson City is in Los Angeles County, and there is no allegation in the indictment that McDonald or any co-conspirator committed any part of the crime in Orange County. There were allegations that an employee of a company called Transportation Concepts committed two overt acts in furtherance of the conspiracy. But it's common ground, and the government agrees, that this charge, conspiracy to extort under color of official right, doesn't require any overt act. It's not an element of the offense. So this was not a part of the crime. The government's only answer is to say, well, when it comes to venue, an overt act is a sufficient basis for laying venue. Well, an overt act of a co-conspirator, yes. But as this Court said in Angotti and as the Second Circuit recently said in U.S. against Geibel, 369 F. 3rd, 682 at 696, for that to work, that is for an overt act to count, it's got to be an overt act of a co-conspirator. And here there's no dispute that this employee of Transportation Concepts was not a co-conspirator. So this overt act was not a part of the crime, and this little speck of Orange County content that is all the government is clinging to as the rule, courts have recognized, this Court recognized in Cruz against Abate, which is a decision written by Judge Kaczynski, the Tenth Circuit recognized in the Pearson case that when the government manipulates a case assignment system for the purpose of influencing the outcome of the proceedings, that raises a serious due process issue. But what was the manipulation here? Well, the manipulation here, Your Honor, is that this case was a Los Angeles County case. It was a Western Division case. And the government, by adding in these alleged overt acts, these couple of paragraphs in this very lengthy indictment, they moved the case over to Orange County. And that's something they should not have done. That was not appropriate under the court's general order. It was not a neutral assignment system. But to show a violation of due process, I think you have to show something more. And I gather what you're saying is your client is an African American, and the chances of his being acquitted would be better in Los Angeles County, where you're more likely to have a mixed jury with a number of African Americans in Orange County, which is pretty much Caucasian and white. Well, we do make that argument, Judge Bright. But before we get there, before we get there, I mean, in the Cruz against Abate case, the issue was simply that the chief judge in Guam was assigning cases to whichever judge he chose. There was no question of race there. It was just that it was an arbitrary assignment system. And in the Pearson case, the problem was that the prosecutor was manipulating the choice of the low docket number. What happened in Abate's case? In Abate's case, the chief judge of Guam had a practice that he would just assign cases to the judges that he wanted to assign them to. And what the Court said, the they said, but they were very clear. They said, this is a problem. This is a very Other districts in the United States, I know some districts where the chief judge decides who gets this and who gets that, and decides to keep the good ones and give the other ones to other people. Well, in the law of this circuit, under this Cruz case, as if that's done in an arbitrary way, that that raises at the very least a serious due process problem. And in the Pearson case, I mean, here we have an additional element, which is the prosecutor, which is not who is not neutral and is not expected to be neutral. They're an advocate. If they are manipulating the system in order to affect the outcome I mean, where a district judge just keeps the good one for himself, I mean, that may not be for the purpose of affecting the outcome. But where you have a party to the case using the system in order to affect the outcome, the Pearson case, that is a very serious due process problem. And here the evidence of manipulation is the strained indictment, the unnecessary allegations. I think the most serious is that the prosecutors made misstatements to the judge when the defense said, we'd like to have this case transferred to Los Angeles. It's a Western Division case. The prosecutor said, and you can find this in the record excerpts at page 30, they said that McDonald caused Rogers, he was this transportation concepts employee, to draft a consulting agreement. And they also said also at page 30, without the faxing of rate information by Rogers, McDonald would not have been able to accomplish his criminal design. So they made those representations to the district court. In fact, those representations were not true. The government doesn't contend they were true. Based on the information that was known to the government at the time, it was Rogers who had the idea of drawing up this contract. It was not caused by Mr. McDonald. And this faxing of the rate information was not essential to the criminal design. It was not of any importance. And then, Judge Bright, we do have, finally, there is this issue that by transferring the case from Los Angeles County to Orange County the government was able to create a situation where it was virtually certain that there would be no blacks, no African Americans on the jury. And this is really, you know, it gets to the same bottom line that the prosecution could get to by using peremptory strikes. I take it you argued this to the district court. Well, the one to be very ---- The manipulation argument. The manipulation argument was made, the due process argument was made, Batson was mentioned, but we did not specifically make a Batson argument. And, of course, as you know, under the Federal government, equal protection is an aspect of Fifth Amendment due process. The arguments are closely related, but there was not a direct argument in the district court, and I want to be very honest about that. The district court concluded there was no manipulation. I think the district court rejected the district court said, I don't think this violated the general order, and we think that's just an error of law. It's an abuse of discretion standard, but, of course, under Kuhn against the United States and other cases, errors of law are abuses of discretion. I think the district judge may have had the idea that, well, this is a violation of my general or the court's general order. I don't need to think about the Constitution and due process. That's we've used the evidence. So did the district court accept your manipulation argument, but, hell, there was no violation of the local rule? Well, I don't think it's correct to say that the district court accepted the manipulation argument. I think the district court said, this ---- I can see that this was acceptable under our general order. If the district court concluded that there was no manipulation, aren't we required to look at the facts in the light most favorable to the prevailing party on that issue? Well, I think if the district court had made findings of fact on this, yes, of course, you would defer to the district court. Can't we imply a finding based on the court's decision? Well, I don't think this is a fair situation to imply findings. I mean, you can, of course, you will decide. But I think what it's fair to say is that the district court said, well, I think this is okay under the general order. I hear your constitutional argument. It doesn't make sense to me because I think this was okay under the order. The Pearson case, the Tenth Circuit case, you know, there, it really ---- there really was no argument that the prosecutor had violated any rule. There was no rule that said you can't manipulate the order of the names on the indictment in order to hand-select your judge. But nevertheless, the Court said that's still a due process problem if the prosecution is manipulating the system, if the system is one that lends itself to manipulation in order to affect the outcome of the case. Well, that count 16, however, dealt with this transportation money, and the money was allegedly extorted to pay off the congresspeople. So that, even though the transportation company was not a conspirator in the ordinary sense, it certainly was a participant in the overall extortion. Isn't that true? Well, that's an excellent way of getting into the second issue which we raised, which has to do with this count 16 and the conspiracy to extort. And the jury instruction that the Court gave there, I think, created a great deal of confusion about this question you raised of who exactly was involved. This was jury instruction number 22. It's in page 173 of our record excerpts. What happened here was that the government started with a model jury instruction that's a perfectly fine jury instruction for this conspiracy to extort directed solely to the public official. But on this count, the allegation was that Keith McDonald, as a private citizen, had conspired with three public officials, three members of the Carson City Council, in order to extract these payments. And what the instruction did was to insert the words, or a co-conspirator, three times. And I'll just read you the instruction, and you can see how this really transformed this charge into something totally different. It turned it into a bribery charge, which is a different crime. This Court has said in the Aguillan case that bribery is committed by both the bribe giver and the recipient, but extortion is committed only by the recipient. And the Court repeated this more recently in the Fraga case, where it said a defendant could not conspire to extort money from himself. That's the nature of extortion. That's the difference between bribery and extortion. But now listen to Instruction 22, and I'll make when the insertion comes, I'll signal it. The instruction required that for the defendant to be guilty of this crime of extortion, the defendant or a co-conspirator --" that was interpolated language to the standard of instruction --" intended to obtain money which the defendant or a co-conspirator knew that the defendant or a co-conspirator was not entitled to in return for an official act. So the government admits that this instruction was not a model of clarity. To their credit, they say right in their brief that this was not a model of clarity. That may be some understatement, but if you parse it out, it's clear that if McDonald gave money to these public officials, the members of the Carson City Council, knowing that they were not entitled to the money in return for an official act, he could be convicted under this Instruction No. 22. But that is bribery. That is not extortion. And extortion has a much higher penalty. And the government's main answer to this, they say, yes, the instruction was not a model of clarity. They admit that, as I say, to their credit. But they say, look, you know, the evidence supported the notion that there was a conspiracy to extort here, and so that ought to be okay. Well, we think the evidence of conspiracy to extort was thin. The real evidence was that McDonald paid money to these three individuals. But the point is we're not challenging the sufficiency of the evidence. We're saying there were two possible views here that the jury could have taken. And it's very well settled that when you have that situation, and one theory is permissible and one theory is impermissible, then you must vacate that count. The verdict cannot stand. So that's our argument on the conspiracy to extort count. If I could, Your Honors, just briefly address one additional count, which is count eight, which was a count of honest services mail fraud. That is, McDonald, now in his capacity as a public official, he was an elected official of the West Basin Municipal Water District in Los Angeles. And he was charged with using the mails in furtherance of a scheme to defraud by depriving another of the intangible right of honest services. And here, the government's evidence showed, here it is essentially a sufficiency of the evidence argument we're making, although it really goes to the meaning of this statute, the interpretation of the statute. So ultimately, this is a de novo issue, we say. The government's evidence was that a payment was made through a company called Ocean Sky, and then to Mr. McDonald, and then when he reported this on his California Form 700, which requires state officials to disclose all their income and the sources of the income, that he was untruthful about the source of the income, that it actually came from a different source. There was no evidence about what this payment was for, whether it had any connection with any of Mr. McDonald's duties as a director of this West Basin Water District. It could have been something personal. It could have been a business matter unrelated to his official duties. And that is not sufficient. In the case we would stand on there, we would simply ask you to look at the Sawyer case from the First Circuit, 85F3rd of 724. And there, the First Circuit has a lengthy decision, and it comes out quite clearly that for this kind of mail fraud, deprivation of the honest services of a public official, you have to show that there was some deprivation of honest services, that it was a material misstatement. It had something to do with the discharge of the official's duties. And if you look at the — they're very clear. The First Circuit says intent to deprive of honest services is not equivalent to or subsumed within intent to deceive the public. That's footnote 12 of their opinion. In other words, the government's theory is, well, he didn't tell the truth on this disclosure form. That's deprivation of honest services right there. That's the end of the case. But it's not. The First Circuit says it's not. They cite an Eighth Circuit case, Judge Bright-McNeve, which is a similar kind of a case where you may have a violation of State law. It may involve some untruthfulness. But if it's not depriving the people of your honest services, it doesn't violate this statute. And except that you still do you still intend to reserve some time? Yes, Your Honor. So I think perhaps I'd better do that. Thank you for that. Good morning, Your Honors. I'm Assistant United States Attorney Kevin Smith, and I'll be arguing on behalf of the government this morning. And what I'd like to do with the Court's permission, of course, is to address the question by Justice Alicorn with respect to whether the district court accepted this manipulation argument by the defendant. In fact, Your Honor, and this is in the record, it's also cited a number of times in the government's brief, the district court rejected the argument that the government's trying the case and bringing the case in the Southern Division was arbitrary or capricious. In fact, the Court found that both during the pretrial motion to change venue brought by the defendant and also post-trial when the motion for new trial was brought by the defendant. So the Court rejected any such claim made of manipulation by the government and found, in fact, as the Court said during the pretrial motion to change venue, there's a reason for filing it here. And the Court found both before and after trial that General Order 95-2, which is the order at issue here, the Court's order, general order at issue here, was met by the government in this case. Now the defendant makes a, or spends a lot of time in the brief and even here this morning arguing that for a Hobbs Act conspiracy, overt acts are not necessary to prove that particular crime. We don't dispute that. But as we argue in our brief, that is of no moment here. The reason is simple. A district court has a very, very broad discretion in interpreting its local rules and general orders. And so because of the nature of efficiency and the like of running the particular district court. In this case, the Court was well within that discretion to find that the overt acts alleged in paragraphs 47 and 51 of the indictment were any part of the crime as required by the district court. Whether or not they were overt acts necessary to prove the offense. That was in the discretion of the district court. And the district court found that those particular overt acts met the general order and therefore found that there was a sufficient reason to have the case heard in the Southern Division. And I would also like to make clear there was no transfer in this particular case of this indictment. I think that was eventually clarified by counsel for the defense. This case was charged in the Southern Division where it was ultimately tried. So there was no transfer here. With respect to the... A separate grand jury in the Southern Division? Correct. Yes. In fact, there is... And where are they drawn from? What counties? I believe they're drawn from Orange County, Your Honor. Just Orange County? I believe so. Well, don't you know? I believe they're... Yes. Like I said, I believe they're drawn from Orange County. I thought that the grand jury in the Southern Division... In the Central District was drawn from all the counties, going up to San Luis Obispo, and coming all the way down, Ventura County, L.A. County, San Bernardino, Riverside. That may have been the case back before we had the three divisions in the Central District. We now have the Western Division, which is Los Angeles County, many of the counties you have a grand jury pulled from that area. We now have an Eastern Division, which is Riverside County and San Bernardino County. They too, I believe, have a grand jury where they draw their grand jurors from the counties within the division. And Orange County is in the Southern Division, or is the Southern Division, and that is where we draw our grand jurors. So in this particular case, there is no showing that the general order 95-2 was violated. Why did the U.S. Attorney's Office decide to go down to Orange County to begin with? Well, for two reasons, Your Honor. It certainly happened up here, didn't it? You mean in Los Angeles County? Yeah. Certainly, we don't dispute again that... There's arsons in Los Angeles County. Yes, it is, Your Honor. Water districts in Los Angeles County. That's correct again, Your Honor. The simple fact is general order 95-2 makes no distinction as to how much of the indictment or how much of the criminal activity is actually in the Southern Division. Somebody had to sit down and make a decision. Correct, Your Honor. In this particular case, the decision was made to try the case or bring the case in the Southern Division because... Who made the decision? The lead prosecutor at the time, Your Honor. Who was that? John Houston. This is not on the record. Well, I don't know if it's on the record. John? Yeah. Suffice to say, that was the decision made there, and it was permissible under 95-2. One other reason that was actually set forth, and it is in the record, it's on page 1779 of the government's excerpts of record, dropped in a footnote in the government's opposite... It took place in L.A. County. Were the indictments returned in Orange County and the trials in Orange County? If, as I work in the Orange County office, if we have a connection to Orange County in our cases and we are the prosecutors prosecuting the case, then we utilize general order 95-2 to bring the cases in Orange County. As I was referring to the government's opposition to the defense motion for change venue, a footnote on the final page of the opposition... You didn't have much of a connection here in this case to Orange County. We had a sufficient connection to utilize general order 95-2, and that was found by the district court. In fact, one of the things that the district court did find was that the consulting contract at issue in paragraph 51 of the indictment, one of the overt acts, was at the heart of the conspiracy scheme because the monies at issue here were to come from Transportation Concepts, which is located in Irvine, California. One of the other reasons that was certainly put in the record by the government in opposing the motion to change venue that was posed pretrial by the defense was the convenience of the prosecution, and they set forth a couple of cases on that line because this was an Orange County... The prosecutors were from our Santa Ana, Orange County office and our case agents also had connections to Orange County. So that was actually in the record. That was set forth in the opposition to the defendant's motion pretrial. The government's position is, and the district court found, there was no violation of general order 95-2. The argument of a due process claim based on... What's the composition of the veneer in Orange County? You know, the jury pool. I don't have some sort of specific statistics, Your Honor. I know that the defendant cited a statistical bureau of the census data of 1.7% of African Americans in the Orange County area. Whether that's accurate or not, I do not know. I don't have a statistical breakdown of different ethnic groups in Orange County or in the Orange County situation. I will say... But we do have a system of selecting the veneer. The whole group of jurors that got to meet federal law. Correct, Your Honor. And so someone has to look at what the population is, the demography of Orange County, and put it into effect. A system that's going to bring everybody in. Back when I was in law school and Judge Allertown was in law school... That was before you were there. Yeah. Me too. Anyway, federal juries consisted of members of the Chamber of Commerce, the Kiwanis Club. No women. There's a lot of women. So we've had a lot of changes to make sure. I'll try to address your question in two different points. The actual individual members that are selected for the Orange County Grand Jury are selected, I believe, in Los Angeles by the Chief Judge of the District Court. That's on a practical level. The issue of whether or not there's a fair representation... The Chief Judge doesn't select the members of the Grand Jury. They're drawn by... They go through a selection process in front of the Chief Judge up in Los Angeles. The Chief Judge doesn't select them. Well, select them in terms of picking names. The people that are drawn in, she then selects them from the group that is... Well, then someone closes their eyes and pulls them out. Right. And then the Chief Judge checks them for suitability for the Grand Juries. But beyond that, Your Honor, the issue... Just so the record is clear, but were those Grand Jurors Orange County residents? I believe they were. All those selected by the Chief Judge? Right. I believe they're told to report to Los Angeles where the Chief Judge selects them. But I will point this out. This very court in United States v. Kennedy, the issue of whether or not the Southern Division, which is in Orange County, has a fair representation of minorities, was challenged back in the 90s in the U.S. v. Kennedy case. And in that case, the defendants challenged the fact that the jurors at that time were selected for cases in Southern Division, were selected from Southern Division and the Eastern Division. That's before there was a, I believe there was an Eastern Division court. So there was a challenge made at that time by those defendants that there should have been potential trial jurors also drawn from the Western Division. This Court rejected that argument on equal protection grounds. And so I think that does address the issue that the Court was referring to with respect to the changes... I've never heard of that case. U.S. v. Kennedy. We've actually cited it in our brief, Your Honor. I'd have to draw the case out of my briefcase to you. Okay. But that is the case that is in our brief and has been decided by this particular circuit. The... Was there a challenge in this case that either the grand jury, the petta jury, was improperly selected and violated the equal protection clause? No. No. In fact, there was no challenge whatsoever by the defense in this case on racial discrimination grounds. They make that challenge before the jury is impaneled. Correct. In this case, there was no such... The racial discrimination argument was never raised in the below, in the district court. It wasn't... And the defense, as I've explained before, attempted this twice. They made a pretrial motion for change of venue. Racial discrimination, the composition of the... Potential composition of the jury and the like never raised then. That was a simple violation of the general order and also asking the court to exercise its discretion. Trial went on. Motion for new trial. The due process claim was raised then. But again, at that point, no racial discrimination argument made. That argument was merely that the general order was applied in a capricious and arbitrary manner by the government. An argument that was rejected by the district court. So there's been no evidence developed in the district court of any type of racial discrimination. This factual record is completely void of any such evidence in this case. And I think the Ninth Circuit has addressed that issue a number of times and found simply they won't hear that type of argument for the first time on appeal because it wasn't perfected and it wasn't preserved in the lower court. And there's nothing to determine at that particular point. You're right. Moving on to the other two other arguments that were raised by the defendant. The first of which has to do with the jury instruction for count 16. This is the extortion, conspiracy to commit extortion under color of official  act. And the government would simply argue that while we did concede in our brief the instruction was on a model of clarity. The instruction was crafted in such a way that in this case because the defendant was a private citizen, okay, the defendant's co-conspirators were the Carson City Council members. In other words, they were the ones who would have to be taking the money improperly, that they were not entitled to in return for an official act. And so what you have here is you have a private citizen, the defendant, conspiring with three Carson City Council members to extort money from a company that was going to be applying for the busing contract in the city of Carson. And so the instruction that was given right before the instruction that was cited by the defense was that the defendant had to become a member of a conspiracy with the, in this particular case, an agreement to extort under color official right with the knowledge of its objects and the intent to further the objects. In this case, there was only one object alleged in the indictment for the conspiracy. The one object was that the defendant would obtain money from transportation concepts and give that money to his co-conspirators in exchange for their taking official action, i.e., in exchange for their vote for transportation concepts to get the busing contract in the city of Carson. So that was very clear. The issue here, the standard, is was there a reasonable likelihood that the jurors would apply this instruction that's in contention in violation of the Constitution? And that is not something that is evaluated in a vacuum, and the cases are very clear. You look at the trial record. You look at the other instructions, in this case also the indictment. You also take a look at the, you can look at the government, the prosecutor's closing arguments or arguments to the jury. In this case, there's no question that the government's evidence that was presented was presented to show that the money in this case was not coming, per se, from the defendant, but was coming from transportation concepts. Okay? That that was the money that the defendant was going to, once he received it based on his consulting contract, pay out to the three Carson City Council members who had agreed before the vote to receive payment in exchange for the vote. So that was the evidence in this case. There was no theory or any other evidence that that money could come from some other source and that the jury could still find the defendant guilty. It just simply wasn't the case. And, in fact, as we cite in our brief, we have examples of, for example, one of the co-conspirators, this is Daryl Sweeney, the colloquy is between Mr. Sweeney and the government prosecutor is laid out in the brief where he makes it very, very clear that he knew the money he was going to receive from the defendant in exchange for his vote was coming from transportation concepts. In fact, the particular discussion there is the fact that he didn't get paid right away after the vote. And when he discussed that with the defendant, it was his understanding that the defendant told him he had not yet been paid by transportation concepts. Was that instruction, was there any objection to the instruction? Yes. Yes. The defense did object at the time. So there's no issue that they didn't object. That's correct. And your position very basically is it was, if it was wrong, which it probably was, it was not a bribery case, this was an extortion case. That it was an extortion case, right. I don't know if we would concede that the instruction was wrong. We do concede that it probably could have been drafted with a little more clarity. But it was wrong. Right. The idea is that, taken in totality, as the Court is entitled to do in evaluating the instruction and trying to determine whether or not there was a reasonable likelihood that the jurors misapplied the instruction. In this particular case, the totality of those circumstances, the evidence, in addition to the government's closing argument, where the government talked, when going through those elements in that instruction, discussed with the jury that the defendant had a consulting contract with transportation concepts, but that the ---- I understand. I want you to spend a little time on the last issue raised, which was that it was not a new probation of honest services. Very good, Your Honor. The government's position in that case is that there is no additional element, as the defense would have the Court adopt, in honest services mail fraud that there have to be a bribe or there have to ---- which would cause a public official to ---- which would affect the personal decision-making of the public official and also provide for a personal gain. That is in their briefs. They cite the Bahannas case in an effort to try to make that claim, I believe. But the Bahannas case is certainly not so restrictive. All the Bahannas case said ---- I thought this had to do with some mailing misstatement of where the sources of money came from. That's correct, Your Honor. I mean, the conducted issue, the issue is whether or not the defendant had a material ---- a duty to disclose material information. And Bahannas says that's sufficient to satisfy the fraud in honest services mail fraud. In this case, the evidence was clear, and it's pointed out in the government's brief, that the defendant was seeking to hide the source of a $100,000, what he termed political contribution, because he had a political difference, and this was the testimony of Laura Chow, the person that he enlisted to help him do this, because he had a political difference and couldn't receive the money directly. That's the conduct at issue here. That's the fact. That's the conduct that the government is arguing his constituents, that he had a fiduciary duty for his honest services, that he deprived them of that with respect to that particular transaction, because he's trying to hide a very, very substantial $100,000 payment that he was going to receive because he didn't want or could not be seen to be receiving that money for political purposes or for political differences. And so it's not merely the government's argument that the violation of the failing to be honest on the California Fair Political Practice Form 700, that that alone constitutes the crime. No. The crime here is that's part and parcel of it. That's how he deprived the citizens of his honest services. I mean, that's how he effectuated the deception. But the deception was the hiding of that particular source of that money. And I don't think there's any argument that constituents are entitled to know when their elected officials are receiving contributions or payments of $100,000 and what the true source of that money is. In addition, he also falsely stated on the Form 700 that he was a consultant or an independent with that particular business. Thank you. Thank you. Briefly, Your Honors, on the honest services mail fraud issue, again, we'd simply say the First Circuit's decision in Sawyer and the decisions that it cites, the Eighth Circuit, is a very dangerous precedent, I submit, for the Court to say otherwise than any misstatement by a government official, even if it's about a purely personal matter, would become Federal mail fraud, a very serious Federal felony. These matters may be covered by State law. This one is. The question here is whether this automatically becomes Federal honest services mail fraud. And we submit it's not. On the extortion question, I think where we are on that is that the instruction was, I guess the government did not quite concede that it was an improper instruction, but certainly imperfect. We say, when you read it, I think you will agree, a flawed instruction. Their main argument is, well, it was harmless error. And it absolutely was not harmless error. I mean, if you look at the evidence on this count, the evidence was that this company, Transportation Concepts, hired Keith McDonald as a consultant, as a lobbyist, to help them get this contract renewed. They were not directed. McDonald didn't approach them. None of these members of the Carson City Council said, oh, go hire McDonald. It was done through one of the, you know, a respected Los Angeles person who said, well, you ought to get Keith McDonald. He can help you with this. Even today, I mean, the testimony of trial was Transportation Concepts thinks this was a perfectly proper lobbying consultancy arrangement. And now there was a lot of evidence that Keith McDonald made these payments of $5,000 to these three city council members, and we're not contending that that was proper by no means, but that is bribery. And the jury could very easily have thought, and the instruction certainly allowed them to conclude, well, if there's bribery, that's enough. I can convict of this count. So it absolutely was not harmless. And then, very quickly, on our initial claim of the location of the trial, I do just want to make the point we are not making a fair cross-section argument. That's not the claim we're making. We say the rule was violated, the general order was violated. Then we have this claim about manipulation of the selection process, which does not depend on somebody's skin color. They could have purple polka dot skin, and if the government is trying to move the case around to get a conviction, Cruz against Abate and Pearson say that's a due process problem. Now, when we do get to race, and we do get there, the argument that we're making is a Batson argument. That's not the kind of argument where you have to build your case back in the trial court. All we have to show is that Mr. McDonald is a member of a cognizable minority. He is. He's an African-American. That a procedure was used that allows a person who is of a mind to discriminate to discriminate. It was. I don't think there's any dispute that this process can let you weed out African-American jurors just as readily as peremptory strikes. So you are making a Batson argument, or? Well, when we get there, I want to be clear, we're making these prior arguments. We don't think you have to get to Batson, but that's our final argument is Batson. It's not a fair cross-section argument. We think it would be sufficient to grant a new trial to say, look, this general order was violated. Yes, the district court has discretion, but discretion has limits. Errors of law are abuses of discretion. It's just clear that no part of the crime was alleged to have happened in Orange County. These few acts of a non-conspirator cannot count. You know, discretion to construe general orders has to have a limit. That's a clear error of law. So that's enough. And then there's this manipulation, as I say. Did you make the Batson argument before trial? And, again, I want to be very honest, Judge Allercone, we did not make a Batson argument at any time before the district court. We did mention Batson. It was mentioned before the court. It is a structural error. You know, I think if the court had been, you know, the New Mexico Supreme Court and Indiana Court of Appeals, there are courts that have said Batson applies in this situation. I think you would have discretion to take it up, but we did not raise it. You mentioned the word structural error. What do you mean by that? Well, Your Honor, a structural error is one where you don't do harmless error analysis Batson is that kind of error. Why? Are you referring to Batson as the structural error? Are you saying if they violate a court rule as to where the case should be brought, that's a structural error? No. No. Although what I would say, Your Honor, first of all, we're perfectly happy to apply harmless error analysis here. That's fine with us. I don't see how you could possibly conclude beyond a reasonable doubt that the outcome of this trial would have been no more favorable to Mr. MacDonald with a jury from Los Angeles County. I just don't think you could make that conclusion. So harmless error analysis is fine with us. The other point I would make is that in venue cases, the law of this Court, and I can give you a citation for this, it's U.S. v. Hunt. Well, one answer is I was not involved at the case at that stage. That's one answer. That's good enough. All right. I was just going to give you a citation, U.S. v. Hernandez, 189 F. 3rd, 785 at 792. Venue error is not the kind of error that the Ninth Circuit has applied harmless error analysis to. Now, this is intra-district venue, but you could apply U.S. v. Hernandez. But as I say, we are happy to, we think under harmless error analysis, there's no way you can conclude that this was harmless beyond a reasonable doubt. Obviously, having a trial in Los Angeles County versus Orange County makes a big difference to a trial, especially when you have an elected official of the county, an African-American. There are lots of factors in play here. This error was not harmless beyond a reasonable doubt. It simply was not. Thank you, Your Honors. Thank you, Your Honor. Thank you. The matter is submitted. We'll go to the last case.
judges: Bright , Pregerson, Alarcon.